**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

**CHRIS J. JACOBS, III,**

        **Plaintiff,**

        **-vs-**                                        **Case No. 07-C-0306**

**RICHARD RAEMISCH and**
**PETER HUIBREGTSE,**

        **Defendants.**

# DECISION AND ORDER

This matter is now before the court on the defendants' motion for summary judgment.

## I. SUMMARY JUDGMENT STANDARD

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *McNeal v. Macht*, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991). "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material

facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The burden of showing the needlessness of trial – (1) the absence of a genuine issue of material fact, and (2) an entitlement to judgment as a matter of law – is upon the movant. However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Anderson*, 477 U.S. at 267; *see also Celotex Corp.*, 477 U.S. at 324 ("proper" summary judgment motion may be "opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves . . ."); Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a genuine issue for trial. "). "Rule 56(c) mandates the entry of summary judgment, . . . upon motion, against a party who fails to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Johnson v. Pelker*, 891 F.2d 136, 138 (7th Cir. 1989). "However, we are not required to draw every conceivable inference from the record – only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991) (citation omitted).

2

## II. BACKGROUND

The plaintiff is a state prisoner who was housed in the Wisconsin Secure Program Facility (WSPF) at all times relevant to this action. Richard Raemisch is the Secretary of the Wisconsin Department of Corrections (DOC). Defendant Peter Huibregtse is currently employed as the warden of the WSPF.

### A. Plaintiff's Facts[1]

The plaintiff avers that he complains daily to Huibregtse and others at the WSPF regarding the lack of food and being denied access to the courts. He also has repeatedly complained to Raemisch, with no response.

The plaintiff avers that he was repeatedly denied trays of food, cut from three meals to two and a half plus "seg loaf," and given trays that were missing food (had less than what was on the menu) or contained contaminated or expired food. The plaintiff has conserved calories by not going to recreation or legal recreation, not taking showers, sleeping most of the time, cutting down on visits, licking trays, and eating apple cores and banana peels.

The plaintiff complains that his parents cannot send him postage or food and also cannot buy postage and food for him from the Canteen. One hundred percent of the plaintiff's income is taken, and he receives no money at all. He suggests that prison and jail staff have put him in the position to create federal and state court filing fees, and legal loan and account overdrafts.

---

[1] The plaintiff submitted a sworn affidavit in response to the defendants' motion for summary judgment. Plaintiff's facts come from that affidavit.

3

The plaintiff's cell has been searched repeatedly. No drugs or weapons have been found, but his carbon paper, paper, envelopes, and forms have been seized. The plaintiff avers that the business office refuses to sell him carbon paper, which he is unable to buy elsewhere, and also refuses to copy some of his legal work. He avers that he was placed on property and paper restriction for a total of six weeks and that his court deadlines have been ignored. The plaintiff states that he was finally given his $ .37 embossed envelopes two days before the postage rate went up to $. 39. He also says that he was denied the chance to file bankruptcy. He also asserts that the prison staff has seized his legal mail, denied and suspended his legal loans, and refused to sell him legal supplies.

He further contends that neither prison staff nor the Department of Justice will photocopy his medical file for him, but he admits that he never signed an authorization. The plaintiff suggests that his legal loan was suspended to thwart his ability to litigate Case No. 06-C-0338 (E.D. Wis.).

**B. Defendants' Facts**[2]

Raemisch does not supervise day to day operations of individual DOC institutions or employees. He has no personal involvement in implementing the policies at WSPF, and he had no personal involvement in the allegations indicated in the plaintiff's complaint.

Huibregtse does not supervise the day to day decisions of personnel at the various departments within WSPF. Huibregtse has no knowledge of, nor was he ever

---

[2] Defendants' facts are taken from their Proposed Findings of Fact, to the extent that they are supported by admissible evidence.

4

personally involved in, any decisions concerning any treatment plans, programs, or other decisions related to the plaintiff's medical needs. At no time did Huibregtse believe that WSPF was not providing 3 adequate meals a day and that the meals provided to the plaintiff posed a substantial risk to his health or safety.

**1. Food Allowed at WSPF**

Pursuant to DAI Policy 309.20.01, all incoming property must be new and shipped directly from the vendor. Family and friends are not allowed to send food to inmates at WSPF. To maintain a safe and secure environment for staff and inmates, all property items received at WSPF are subject to inspection and approval to ensure conformity to personal property regulations, that the items pose no security concerns, and to ensure contraband is not present. It is a challenge for the DOC to prevent drugs and other contraband from being sent to inmates through the mail. Property and/or food allowed from sources outside the institution create a new vehicle for contraband such as drugs and weapons to be smuggled into the institution. Contraband in the institution is minimal due to the efforts made by the DOC and the diligence of the DOC staff, but it is still finding its way into the institution. Limiting the types of property allowed to be sent into the institution and receiving property only from approved sources greatly reduces the chances of contraband being smuggled into the institution.

Allowing property/food to be sent into the institution by friends and family could lead to an increase in mail volume, and therefore make it more difficult for staff to

5

effectively search incoming mail and property. The increased volume would also be likely to cause mailroom backups and cause inmates to suffer delays in receiving their mail.

Given the population and security status of inmates, the necessity of cell searches for contraband is essential to maintaining security within the institution. The time necessary to conduct a thorough cell search would greatly increase if staff had to spend time handling items which are more likely to conceal contraband given the material make up of food. This additional time diminishes the security staff's ability to address other institution functions.

In addition to the possibility of contraband, there would also be concerns with storage issues, contamination from spoilage, and what the ingredients really are in the food.

Friends and family are not allowed to purchase food and postage for an inmate from the institution canteen. All purchases must be made by the inmate from his inmate account. However, friends and family are allowed to put money in an inmate's account for spending. WSPF does not have the capability to allow friends and family to purchase items from the canteen for an inmate. The canteen purchasing system is set up to deduct charges from an inmate's accounts, not outside payment methods.

WSPF serves three meals a day. All of WSPF's menus exceed the minimum requirements for caloric content. WSPF's menus are monitored and analyzed regularly to ensure that they continue to maintain compliance with the dietary requirements.

Wisconsin Administrative Code 309.23(1) states in part: "The department shall provide nutritious and quality food for all inmates. Menus shall satisfy generally accepted

6

nutritional standards." Institution meals are measured and periodically checked for adequacy in terms of calories, protein, carbohydrates, and other dietary factors. If an inmate believes that he needs more food/calories per day for health reasons, he may request a special diet and then Health Services Unit personnel will monitor the inmate's weight and modify his diet accordingly.

**2. Legal Loans, Legal Materials, and Plaintiff's Finances**

Reasonable efforts are made to ensure adequate legal services are available to indigent inmates. Legal materials are available from the institution law library or the law librarian. If an inmate is indigent and would like to request a legal loan, he may do so by contacting the Business Office. Legal loans may be used to purchase legal supplies such as paper and pens. Legal loans also may be used for legal postage and copies of legal materials. If an inmate has been approved for a legal loan, supplies may be obtained by sending a disbursement request along with a completed order form to the Business Office/legal supplies. Jacobs has been approved and has utilized legal loans while housed at WSPF.

Pursuant to the WSPF Segregated Inmate Handbook (which the plaintiff received while house at WSPF), and in order to prevent contraband from entering the institution, correspondence is to be sent in embossed envelopes that must be purchased from the Business Office. Inmates may request extra postage by submitting a disbursement. Stamps can contain chemical contraband like PCP, Angel Dust, or other drugs. Once a stamp has been placed on an envelope, there is less chance of an exchange of these types of dangerous chemicals.

The plaintiff currently has the following outstanding debts: (1) account over draft $1.33, (2) federal court filing fees $3,037.42, (3) state court filing fees $3,493.80, (4) medical co-pays $116.83, (5) legal loans $1,325.44, (6) institution restitution $169.75. The grand total is $8,144.57. DAI 309.45.02 dictates the order in which these obligations are withheld and at what percentage. If funds were to be received on the plaintiff's behalf, deductions would be taken out in order. $1.33 would be withheld first at 100%. Then 20% of whatever is left would be withheld for the first federal filing fee, then 20% of what is left would be for the second filing fee, and so on until all thirteen federal filing fees have been withheld. After the federal filing fees, 100% would be taken out until each of the 20 state court filing fees are paid in full. Once the state filing fees are paid off completely, 15% of any remaining funds would be withheld and placed into his release account. Medical copays would be withheld next at 100% of remaining funds until they are paid in full. Legal loans are withheld at 50% and are only taken one at a time. This means that until the first legal loan is paid in full, no deductions would be taking for the remaining loans. After the legal loan deduction, 50% of anything left would be deducted for the institution restitution. It would take a very large deposit for any of the funds to remain in the plaintiff's account.

### III. DISCUSSION

The defendants argue that they are entitled to summary judgment on the plaintiff's Eighth Amendment conditions of confinement and First Amendment access to the court claims. They submit that the plaintiff will not be able to prove that he was provided with inadequate meals or denied meaningful access to the courts.

The plaintiff continues to argue that he is being denied adequate food and access to the courts. He also argues against the policies that prohibit his parents from sending him food and postage.

**A. Personal Involvement**

Section 1983 does not allow actions against persons merely because of their supervisory roles. *T.E. v. Grindle*, 599 F.3d 583, 588 (7th Cir. 2010); *Palmer v. Marion County*, 327 F.3d 594 (7th Cir. 2003). Since a § 1983 cause of action is against a "person," in order "[t]o recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right." *Johnson v. Snyder*, 444 F.3d 579, 583 (7th Cir. 2006) (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)). In order to be personally responsible, an official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.*

It is not clear that either of the defendants were personally involved with any deprivation alleged by the plaintiff. In fact, they have both presented admissible evidence, in the form of their affidavits, that they were not personally involved in any decision regarding the plaintiff. However, the plaintiff avers that he complained to both Raemisch and Huibregtse but received no response. Additionally, to the extent the plaintiff contends that prison or Department of Corrections policies resulted in constitutional deprivations, the defendant could be held liable in their official capacities.

## B. Eighth Amendment

"Under the Eighth Amendment, a prisoner's diet must provide adequate nutrition, but prison officials cannot be held liable under the Eighth Amendment unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not." *Mays v. Springborn*, 575 F.3d 643, 648 (7th Cir. 2009) (citations omitted).

The plaintiff argues that a doctor authorized him to receive additional food and that the defendants failed to follow the doctor's orders. However, the plaintiff has present no admissible evidence that a doctor ordered that he receive additional food. The plaintiff references a medical record in his affidavit, but he does not attach it, which is required if a paper or part of a paper is referred to in an affidavit. *See* Fed. R. Civ. P. 56(e)(1). Accordingly, these assertions are unsupported and will not be considered.

A plaintiff who puts his health at issue in litigation thereby waives the physician-patient privilege. Wis. Stat. § 905.04(4)(c). Nevertheless, an authorization from the plaintiff giving informed consent is necessary for the records to be copied and used by the defendants in this litigation. Wis. Stat. § 14682(1). In this case, the plaintiff refused to provide such an authorization. As a result, he may not rely on any information found in his medical records to support his claims.

The plaintiff provides vague assertions regarding the meals he was provided at the WSPF, but he does not include details or even approximate dates. At this stage of the proceedings, the plaintiff must support his claims with more than conclusory allegations.

10

"Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in the lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (internal quotation marks and citations omitted). Even viewed in the light most favorable to the plaintiff, his vague assertions are not enough to constitute deliberate indifference to his adequate nutrition. He has not proved a sufficiently serious deprivation regarding meals missed.

Moreover, to the extent the plaintiff challenges the policies precluding his parents from sending him food, his claims fail. The defendants have presented uncontroverted evidence that their polices regarding meals, food being sent from outside the prison, and canteen purchases are reasonably related to legitimate prison interests. *Turner v. Safley*, 482 U.S. 78, 89-90 (1987). It was the plaintiff's decision to file so many lawsuits, knowing that the filing fees would be established as obligations against his account and that any funds received on his behalf would be withheld to pay for the outstanding debts. By allowing friends and family to purchase items for an inmate from the canteen, it would allow an inmate possibly to ignore financial obligations that they have made through the DOC, the federal courts, and the state courts.

## C. First Amendment

Under the First Amendment, "persons in prison, like other individuals, have the right to petition the Government for redress of grievances which, of course, includes access of prisoners to the courts for the purpose of presenting their complaints." *Bridges v.*

11

*Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009) (internal quotations and citations omitted). "A prisoner asserting a denial of access claim must show an "actual injury" in the form of interference with a 'nonfrivolous legal claim.'" *Id.* (quoting *Lewis v. Casey*, 518 U.S. 343, 353 (1996)). "In other words, the right of access to the court is tied to and limited by a prisoner's right to 'vindication for a separate and distinct right to seek judicial relief for some wrong.'" *Bridges*, 557 F.3d at 553 (quoting *Lehn v. Holmes*, 364 F.3d 862, 865 (7th Cir. 2004)).

The plaintiff's affidavit references *Jacobs v. Frank*, et al., Case No. 06-C-0338 (E.D. Wis.), and suggests that the defendants' actions or policies that case to be dismissed. However, that case was dismissed on January 12, 2009, pursuant to Federal Rule of Civil Procedure 37(b), because the plaintiff failed to comply with an explicit direction from the Court to provide the defendants with a signed authorization. Judgment was entered the same day. The plaintiff does not aver that the defendants' prevented him from signing the authorization. The plaintiff chose not to provide the defendants with a signed authorization, as ordered by the court, and, as a result, his case was dismissed. Thus, the court concludes that the defendants' actions did not result in "actual injury" in the form of interference with the plaintiff's claims in Case No. 06-C-0338. In order to prevail on an access to the courts claim, the plaintiff must prove that he lost one or more cases due to the deprivations he alleges. *See Pratt v. Tarr*, 464 F.3d 730, 733 (7th Cir. 2006). He has not done so. Accordingly, the defendants' motion for summary judgment will be granted with respect to the plaintiff's access to the courts claim.

## IV.  ORDER

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment is **granted**.  (Docket #108).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of the defendants on the plaintiff's claims that he was denied adequate food and access to the courts while housed at the WSPF.

Dated at Milwaukee, Wisconsin, this 30th day of September,  2010.

**SO ORDERED,**

*s/ Rudolph T. Randa*
**HON. RUDOLPH T. RANDA**
**U.S. District Judge**